ANDREWS vs. MOORE.

STARK.
December 1817

Andrews
v.
Moore.

On setting aside an office judgment, with leave to plead, defendant cannot put in a special demurrer.

After *oyer* prayed and had, it is too late to object to the omission of profert.

M. A. covenanted, in consideration of the sum of 300 dollars covenanted to be paid him by T. M. 45 dollars and 75 cents of which to be paid in one month, 100 dollars on or before the 15th May then next, and the remainder by the 1st May 1816, to deed a lot of ground to T. M. on or before the 15th May then next; held that these covenants were independent.

A deed may be declared on as made on the day it was delivered, ahltough it has no date.

This was an action of covenant, brought by writ issued in term time, returnable forthwith, at June term 1816. A declaration was then filed, and a rule taken for a plea; and at Dec. term 1816, HAL-LOCK, for the plaintiff, moved for judgment for default of a plea.

WRIGHT, for the defendant, asked leave to plead, instanter, upon the usual terms; which was granted. He then put in a special demurrer to the declaration, with which he prayed *oyer* of, and set out the covenant declared upon, as follows, viz.

"Memorandum of a contract, made between Moses Andrews, of the Town of Canton, Stark County, Ohio, of the one part; and Thomas Moore, of the same place, of the other part; witnesseth: That the said Moses, for and in consideration of the sum of three hundred dollars, to be paid in the following manner, viz. one Lot of Ground in the Town of Canton, known and designated by number one hundred and twenty four, as Recorded on the plat of said Town, in one month from the date, by good and sufficient warrantee deed; which lot is estimated at forty-five dollars and 75 cents; and one hundred dollars, on or before the fifteenth day of May next, for the second instalment; and the remaining sum of one hundred fifty-four dollars and twenty-five cents, against the first day of May, one thousand eight hundred and sixteen; which last mentioned sum the said Thomas agrees to give his note, with security, upon the receipt of a deed for lot number seventy-five, in the town of Canton, which deed the said Moses agrees to make

STARK.
December 1817
Andrews
*v.*
Moore.

to the said Thomas, his heirs, executors, or administrators, or any of them, on or before the fifteenth day of May next. It is further understood, that the aforementioned deed shall be a sufficient warrantee deed, that the said Moses shall make, or cause to be made, to the said Thomas. In witness whereof, the parties bind themselves, each to the other, in the penal sum of six hundred dollars. Signed and Sealed in the presence of us, the day first written.

M. ANDREWS, [SEAL.]
THOS. MOORE, [SEAL.]

Attest.
THOS. B. ANDREWS.
GEO. STIDGER.

Received on the within article, the within mentioned deed for Lot No. 124, and seven dollars in cash.

January 29th, 1815.                                    M. ANDREWS.

. Canton, July 6th, 1815, Received on the within, ninety eight dollars by me.

M. ANDREWS.

Also the following plea in bar, viz.

" And for further plea in this behalf, by leave of the court, &c. The said Thomas, by J. C. WRIGHT, his Attorney, comes and defends the wrong and injury, when, &c. and says, the said Moses his said action ought not to have or maintain, because he says, that in and by the said article, it is covenanted and agreed by the said Moses, that he, the said Moses, before the time for the payment of the said sum of money mentioned in said declaration, or the securing thereof, would make to the said Thomas a good and sufficient warrantee deed for Lot No. 75, in the Town of Canton—and the said Thomas avers, that the said Moses has not at any time hitherto, made and executed to the said Thomas, a good and sufficient deed for said Lot of Land, according to his said precedent, covenant, and agreement, which he is ready to verify, &c.   Wherefore he prays Judgment, &c."

To which the plaintiff demurred generally.

And lastly—*Non est factum.*

HALLOCK, moved that the special demurrer might be stricken out, and urged that the defendant was within the same rules of pleading, as though an office judgment had been set aside; and by the course of practice in the English courts and here, a special demurrer is not receivable in such case.

WRIGHT contra, said that if such was the usual practice, (which he did not admit) this case did not stand on the same ground, there not having been any office judgment signed, and the whole proceeding being so uncommonly hurried by the plaintiff, as that he was not entitled to any favorable assistance.

STARK.
December 1817
Andrews
v.
Moore.

PRESIDENT.—The plaintiff was entitled to a judgment by default, for want of a plea, according to the practice of the court; and the defendant coming in, after a motion for judgment, is in the same situation as though at his instance an office judgment had been set aside on the usual terms of pleading, issuably an equitable plea, going on to trial or continuing the cause, at the election of the opposite party. The defendant has prayed *oyer*, and had it, and then demurred to the declaration. He has also put in two pleas in bar. The first, only, is objected to, and on the ground of its being a special demurrer. The distinction made in the English courts, is between frivolous pleas and those which go to the merits of the case, as appears by the case of Wright vs. Russell, 2d Bl. Rep. 923—Berry vs. Anderson, 7 T. Rep. 530—and Bell vs. Da Costa, 2d Bos. and Pul. 446.

The party moving to set aside an office judgment, does so on the ground that he has a good defence on the merits. He thus obtains leave to plead. His plea, therefore, should go to the plaintiff's right of action, and not to mere matter of form. A special demurrer is not always frivolous, for advantage may be taken under it, of substantial defects; the causes assigned, may be struck out, and leave to the party demurring, all he can reasonably ask. We prefer following the English practice in this respect, and consider that a special demurrer, as such, is not receivable in this stage of the cause. The defendant may, however, let the demurrer stand as a general one, if he thinks proper.

WRIGHT, for the defendant, now argued, that "There is a general demurrer to the Narr. here, and the objections arising thereon, to the plaintiff's right to recover, are:

1st. The want of legal profert of the article of agreement, or excuse for its omission.

2d. The want of an averment of plaintiff's having performed the covenants on his part, in said article to be performed, particularly of conditions precedent.

3d. The want of an averment of the date of the article.

STARK.
December 1817

Andrews
v.
Moore.

4th. That the breach assigned, is not of any covenant in the article to be performed by defendant.

5th. A variance between the article and description in the Narr.

As this demurrer has been put in on *oyer* of the article, I shall consider the article as a part of the record, in the view I take of this motion.

1st. I take it to be clear law, that in all actions founded on specialties, a profert of the specialty must be made in the Narr. or a legal excuse shown therein for the omission.—Here is no profert, but an attempt at an excuse, that the article is as the hands of one George Stidger.—Who George Stidger is, or how the article came into his possession, does not appear.—It is a rule in pleading, "that every thing shall be taken most strongly against the party pleading." 1st Chit. Pl. 241—1st Saund. 259, n. 8—2d B. and P. 155—4th East 343—Apply that maxim here, and we may suppose the plaintiff placed the article in the hands of Stidger to avoid making profert; for such supposition may well be reconciled with all that is stated in the Narr. If the article had been lost by time, accident, was in possession of defendant, or had been destroyed by him, the showing such facts would excuse the profert : but would it excuse profert that the plaintiff had *wilfully destroyed the article*, or *voluntarily placed it in the hands of a third person !* I think not—and have not laid' my hand upon any authority looking that way. The plaintiff ought to show *how* the article came into Stidger's possession—and that it was by course of law, time, accident, or procurement of defendant, and that he refused to deliver it up on demand, before it works an excuse for him.

2d.—The forms of pleading require a general allegation of *performance*, &c. by plaintiff, but however the law may be as to necessity of such allegation, I apprehend it will not be denied, that if it appear in this case by the Narr. or the article on *oyer*, that the performance of the act complained of by the plaintiff depended on the doing of some previous act, by the plaintiff himself, that *performance* by him of such act, or excuse for the non-performance must be averred in the declaration—1st East 203—2d Bur. 899—2d New Rep. 233—Doug. 690-1—1st Chit. Pl. 352—It will only be necessary here, then, to inquire whether, by the article in this case, the plaintiff was to do any act upon which depended his right to demand the $154.25 declared for. — The article provides for the payment, or securing the payment, of " the remaining sum of $154.25 against the 1st May 1816, which last

mentioned sum the said Thomas agrees to give his note <span>STARK.</span> with security, *upon* the receipt of a deed for Lot No. 75, in <span>December 1817</span> Canton, which deed the said Moses agrees to make to the <span>Andrews *v.* Moore.</span> said Thomas, on or before the 15th May next," (*i. e.* 1815) the time of paying the 2d instalment. The order of time here, as well as the language, shew clearly the intention of the parties, that the deed for lot 75 should be made by the plaintiff, before he should have a claim for the last of the money. *Upon* the making the deed by the plaintiff, depended his authority to compel the defendant to *pay* or *secure* the money. It was not their intention, that the defendant should pay the whole consideration money, and look only to the plaintiff's responsibility. It seems evident he distrusted that; and, in order to secure the lot, and to make the thing reciprocal, he agreed, on receiving the deed, to *secure* or *pay* the plaintiff. The authorities cited below, will be found to contain the law on the subject of such conditions: 1st Saund. 320, n. 4; 2d Saund. 308, a n. 3, and 352 n. 3; 1st H. Blk. 273; 1 Wms. Abridg. 396; 6th T. R. 572; 1st Cowp. 50; 2d New Rep. 233; 1st East, 203; 2d Bur. 899; 2d Johns. 145–207-272-387; 10th Johns. 203-266.

3d. As to the date. I conceive it necessary, in declarations upon all specialties, to describe the instrument as having a date; and to shew the date, or describe it without date. The article produced, does not satisfy the declaration, but is variant therefrom, inasmuch as it is not there stated to be without date. It is variant, also, in another particular. The description of the Narr. is of "a certain writing obligatory, or article of agreement, under the hand and seal of the said Thomas." The article produced, is an article of two parts, between the said Thomas and Moses, and under the hands and seals of both of them. This is a fatal variance on demurrer, and would not even be cured by a verdict. Gordon vs. Austin, 4th T. R. 611; Whitwell vs. Bennet, 3d B. & P. 559; Hooker vs. Cooke, 4th T. R. 314.

4th. As to the breach. The covenant is, to give a note, with security, on the 15th May 1815, for the payment of $154 25, on 1st May 1816—the breach is, the non-payment of the money on the 1st May 1816. I take it, if the note and security were given for this payment, on the 15th May 1815, the right of action on the covenant is gone, the plaintiff must look then only to his note and security—and it no where appears in this declaration, but that the note and security was given. The court will not presume the defendant more in default than the plaintiff has alleged. This breach does not answer the covenant;

STARK.
December 1817
Andrews
v.
Moore.

indeed it may well stand, and the defendant still have performed everything he was bound to do by the terms of his covenant."

HALLOCK, contra.—"This case stands on a general demurrer. The court, having decided that a special demurrer could not be put in after a default—and ordered that the causes of demurrer stated by the defendant, be struck out. The first question will then be—whether a want of profert is fatal on general demurrer. It appears, from 1 Chitt. 350, and 5 Com. Dig. 478, that, at least since the stat. 4 and 5 Anne, want of profert cannot be taken advantage of, on general demurrer. Although it be admitted that, by the rigor of the ancient common law, want of profert is matter of substance—it cannot be pretended, that the courts of the state of Ohio have adopted the common law rules of pleading, in their extent: by that law, the least defect in form, the mistake of a syllable, or even letter, when it did not alter the substance, was fatal in any stage of the proceedings.

The courts of this state are not bound to adopt the English rules of pleading, any further than they are conducive to the attainment of justice. They have exercised their discretion on this subject, and have adopted the English system of pleading, as modified by statute. If this be correct, it will not be pretended that we have not adopted the improvements of the English system, as far down as the above stat. of Anne.

A contrary rule, to wit, that the old common law rules are in force here, would be extremely inconvenient. Parties would be continually delayed, and subjected to costs, upon the most frivolous objections.

Another reason may be given in this state, why want of profert should not be bad on general demurrer, is, that we have a statute which gives to defendants the right of having a copy of the instrument declared on, before they are compelled to plead.

But, whatever opinion the court may entertain on the above, it appears from these pleadings, and so was the fact, that the defendant had *oyer* in this case, before plea pleaded, and when demanded. It would seem to me, that when a defendant asks and accepts of *oyer*, and puts the instrument on record, he thereby precludes himself from objecting to the want of profert as a substantial defect in the declaration.

2d. The second objection is, the want of an averment of performance by the plaintiff, of the covenants on his part. The general averment of performance, is unnecessary, 1 Saund. 235, n. 5. The question will then be, whether the instrument contains any

covenant on the part of the plaintiff, which is a condition precedent to the covenant on the part of the defendant, for the breach of which this action is brought. The action is brought for the $154 25, payable 1st May, 1816. The defendant claims, that before he was bound to make that payment, the plaintiff ought to have executed a deed to him, of lot No. 75.

In the investigation of this question, it may be well to consider the nature of covenants, their different kinds, and the mutual rights of these parties under this instrument. Lord Mansfield says (Doug. 690, 1 Chitt. 310) there are three kinds, to wit: 1st. Mutual and independent: 2d. Conditions dependent: 3d. Mutual conditions, to be performed at the same time. In the first class of cases, each party has his action without performance on his part. In the second class of cases, the plaintiff must perform the conditions on his part at all events; an offer to perform is not sufficient—see 1 Chitty, 312–13. In cases of the third class, if one party is ready, and offered to perform, he may maintain his action.

The intention of the parties, to be collected from the whole instrument, will determine to what class of cases, the covenant in question belongs. This intention is a question of law, to be determined by established rules of construction, and the good sense of the case.

In this case, the covenants were entered into in January 1815. The plaintiff agreed (in consideration of $300, to be paid as follows: Lot No. 124, to be conveyed in one month, as $45 75—$100 on or before 15th May then next—and $154 25 in one year from that time) to convey lot No. 75, on or before the 15th May 1815. And upon the receipt of a deed for lot No. 75, defendant agreed to give his note, with security, for the last payment.

There can be no doubt that the first covenant on the part of the defendant, to wit, to convey lot No. 124, is an independent covenant.

The next covenant, on the part of the defendant, is to pay $100 on or before the 15th May 1815. This corresponds, in point of time, with the plaintiff's covenant to convey lot No. 75. If these two covenants stood alone, and each was the consideration for the other, they would undoubtedly be mutual conditions. Either of the parties suing, must aver performance, or an offer to perform. But as part of the consideration of Andrews' covenant was the conveyance of lot No. 124, Moore might bring an action on Andrews' covenant, if he had conveyed lot No. 124, without paying,

STARK.
December 1817

Andrews
v.
Moore.

or offering to pay, the $100—(see Boon & Eyre, 6 T. Rep. 573—1 Saund. 320, n. 6.)  The parties would then be in this situation : Moore could sue Andrews, but Andrews could not sue Moore, on covenants which were to be performed at the same time.  This is a state of things which, it seems to me, the law will not sanction.  If Andrews performs the consideration on his part, he is obliged to trust to the personal security of Moore for the greater part of the consideration of his covenant, and he may thereby lose it.  The same state of things exists, if Andrews is sued, and compelled to a performance on his part.  Such principles are inconsistent, and give one party an advantage over the other.  The conclusion which I draw is, that the covenants, so far as they are yet considered, are independent.  It is evident, from Moore's agreeing to perform the first covenant on his part, before receiving any consideration, that he was willing to trust to the security of Andrews—1 Chitt. 311 to 316 —6 T. Rep. 578—Wms. Abridg. 395.

But there is another covenant in the instrument in question, which shews, conclusively, the intention of the parties—and that is, the covenant by the defendant, to give security for the last payment upon the making of the deed. It shews, clearly, that it was not the intention of Andrews to trust to the personal security of Moore, and that it was the intention of defendant to trust the plaintiff (1 Wms. Abridg. 398.) Taking the covenants to be performed in 1815, by themselves, it will not be pretended that plaintiff was bound to make the deed till security be given.  Will it be said, that he ought to have offered to execute the deed upon security being given ?   No benefit would arise to the defendant ; he had trusted to the plaintiff's security already, and had agreed to trust to it until he should secure the plaintiff.  This case is entirely distinct from those where the mutual covenants go to the whole consideration on both sides—there each party is willing to perform if the other will, but does not trust to the other at all.

The cases cited by the defendant in 10 John, and the cases there referred to, are not in point.  In all those cases, the payment by defendant, was to proceed *parri passu* with performance.  The opinion of Kent, in 10 John, 205, is in favor of the plaintiff here—he says the covenants might have been considered independent, " if the contracts had not provided that a certain part of the consideration was to be paid on the completion of the service, and which rendered the service *pro tanto*, a condition precedent."

Suppose A. covenant with B. in consideration of $500, to be

paid in five equal instalments, to convey a tract of land— <span style="float:right">STARK.<br>December 1817</span>
the deed to be made on the payment of the third instalment
—I can find no case which is precisely in point. The <span style="float:right">Andrews<br>v.<br>Moore.</span>
observation of Kent, above recited, is in favor of the whole
b·ing considered as independent. I think they clearly would be so, on
general principle. · B. by agreeing to pay the $200, before receiving
any consideration, evidences his intention to trust to the personal
security of A.; and further if B. pay A. the first $100—he may then,
without paying any more, as soon as the time is run, compel A. to
perform the whole of his part, although he has received but the fifth
of the consideration. Suppose further, to make the case correspond
with the one before the court—that B. had agreed to give bond and
security for the last payment, upon the receipt of the deed—this would
be additional evidence that A. was not to trust B. but B. A.

As to the 3d objection—that there is no date—There is no authority
that the instrument must be described as having no date, the authori-
ties are the other way; 2 Show. 411—3 Boss. & Pull. 173.

4th objection—that there is no sufficient breach assigned. The
court cannot presume that the note, with security for the last payment,
was given. If such had been the case, the defendant should have
shewn it. Even if it had been given, the plaintiff might have sued
on the covenant, or on the note, at his election.

5th objection—a variance between the article and description in
Narr. The authorities cited by defendant, have no bearing on the
question.

The article is not an indenture, but a deed-poll, and may be declared
on by either party as such. Cro. Eliz. 483:

It is a deed to plaintiff as well as to defendant, and the describing
it either way is correct, and no variance. It is not necessary to set out
more of an instrument than makes for the party setting it out. If the
instrument contain stipulations in favor of the other party, he must
shew it. 1 Saund. 276, note.

Variance can only be taken advantage of, on plea.

As to the demurrer to the defendant's 2d plea, it depends upon the
question raised by the defendant's demurrer.

PRESIDENT.—The defendant has had *oyer* of the covenant on which
this suit is brought; " if there be *oyer* of a deed shewn in a declaration
it will be part of the declaration " 5 Com. Dig. 479—after making it a
part of the plaintiff's declaration, he is too late to object to the want of
a profert, for that defect is aided by the *oyer*.

STARK.
December 1817

Andrews
v.
Moore.

The next question raised by these pleadings, is, as to the kind of covenant upon which this suit is brought. It is argued, by the defendant's counsel, that the covenant of the plaintiff, to convey Lot number 75, in Canton to the defendant, is a condition precedent, the performance of which must be averred, to entitle him to recover; and there is no doubt but that if it is to be considered as a condition precedent, or that the covenants to convey, and to pay the 154 dollars and twenty-five cents, are dependent, an averment of performance, or of a readiness and willingness to perform, is an indispensible averment—without which the plaintiff cannot recover. Whether covenants are dependent or independent, must be determined by the intention of the parties, and the law has given some rules of construction by which that intention is to be ascertained.

The rule laid down by lord Mansfield, in Brown vs. Eyre, 1st Hen. Black. 273, n. (a) that "where mutual covenants go to the whole consideration on both sides, they are mutual conditions, the one precedent to the other: but where they only go to a part, when a breach may be paid for in damages, then the defendant has a remedy in his covenant, and shall not plead it as a condition precedent," has been considered as the settled law on the subject. Davidson vs. Gwynne, 12 East 389, and Bennett vs. Executors of Pixley, 7th Johns. 249. Again, if a day be appointed for payment of money, or part of it, and the day is to happen before the thing which is the consideration of the money is to be performed, the covenant in such case, is independent: Pordage vs. Cole, 1st Saund. 319. Now here the defendant has covenanted to convey lot No. 124, in Canton, to the plaintiff, in one month, it could not be the intention of the parties to make this conveyance a condition precedent, for in the order of time it is the first act to be performed; it is then an independent covenant; and being so, it determines the nature of all the subsequent covenants; for although in a contract where each party is to perform certain acts, by express words, the doing of some one act may be made a condition precedent to the doing of some other act: and the residue of the covenants, on both sides, be mutual and independent; yet such construction is not to be put on a contract, unless it appears clearly to be the intent of the parties to it; "for if the covenants be once established to be independent covenants, they continue so throughout, although the plaintiff had covenanted to do certain acts on his part, in the intermediate time between the performance of the different acts to be done by the

defendant." Wilson vs. Ten Eyck, 5 Johns. 78—The case cited, of Wilson vs. Ten Eyck, is much like the case before us, in that, by articles of agreement, dated 9th Sept. 1807, A. covenanted to execute a deed, in fee, for a certain farm to B. on the 15th May 1808; in consideration whereof, B. covenanted to pay to A. 50 dollars in four weeks after the date of the agreement; 50 dollars in three weeks thereafter, and 900 dollars on the 15th of May 1808; and it was held, that the covenants were mutual and independent. The action was brought to recover the money, the declaration did not aver a performance on the part of the plaintiff, who was to make the conveyance, or a readiness and willingness to perform: a general demurrer was put in to the declaration, and judgment was for the plaintiff. This case was decided on the authority of the case of Sears vs. Fowler and Havens vs. Buck, 2d Johns. 272 and 387, and of Terry vs. Duntre, 2 H. Bl. 389. Chief justice Kent, in the case of Cunningham vs. Morrell, 10 Johns. 203, thinks these last cases erroneously decided, and that the error "consisted in holding the covenants to be independent throughout, because a part of the consideration money was to be paid before the entire service was to be performed." He says, " this might have been the case, if the contract in all those cases had not provided that a certain part of the consideration was to be paid *on the completion of the service.*" I do not consider the case of Cunningham vs. Morrell, as shaking the authority of Wilson vs. Ten Eyck, because in the latter the payment of the 900 dollars on the 15th May 1808, was not, *by the terms of the contract,* made to depend on the execution of the conveyance; whereas, in the former, the payment of 6000 dollars was *for completing the whole work.*

It is argued by the defendant's counsel, that the payment of the $154 25, and the securing it to be paid, were made to depend *upon* the making of the deed by the plaintiff, but I cannot so understand this contract. If the action has been brought on the covenant, to give a note with security, *by the express terms of the contract,* the plaintiff would have been bound to shew that he had made the deed, because it was only upon making the deed that such note and security was to be given; but before this money became payable on the covenant, the defendant might have sued for and obtained his deed. As, therefore, the parties have not, by express words or evident intention, made the conveyance of Lot number 75, in Canton, a condition precedent to the payment of the money, or made the payment depend on the making of the deed, these must be taken to be mutual

and independent covenants, the performance of which need not be averred on either side to support an action.

The next objection is on account of alledged variances between the contract declared on, and the declaration; first, as to the date, the declaration sets forth, that "on the 3d day of January, in the year of our Lord one thousand eight hundred and sixteen, at, &c. by a certain writing obligatory, or article of agreement, then and there made, under the hand and seal of the said Thomas, he, the said Thomas, did covenant and agree," &c. This is not an averment that the article of agreement bore date on the 3d day of January 1815, but that it was made on that day; the article read on *oyer* has no date, and it must be taken to have been made as is stated in the declaration. This manner of describing a writing without date, appears to be correct—in 5 Com. Dig. 636, it is said, that "*per scriptum obligatorium* is sufficient, without mention of the date, or seal or delivery." The second variance is, that the declaration describes the article of agreement as " a certain writing obligatory or article of agreement, under the hand and seal of the said Thomas," whereas the article produced is an article of two parts, between the said Thomas and Moses, and under the hands and seals of both of them. The authorities cited in support of this objection, do not well apply to this case; on the reason of the thing, I cannot see why the plaintiff should be bound to declare on this agreement, as a covenant made by himself and another, unless it should be thought necessary to set forth the whole consideration of the defendant's covenants; taking the covenants as mutual and independent, they may be declared on as such, and the covenant read is variant from the declaration only on the assumption that its stipulations are dependent.

The breach assigned, is properly assigned, because if a note had been given it would be no payment, and could not be pleaded in bar.

The demurrer to the declaration is, therefore, overruled, and the demurrer to the plea in bar is sustained.